Brian J. Porter, Bar Number 14291
Armand J. Howell, Bar Number 10029
Benjamin J. Mann, Bar Number 12588
HALLIDAY, WATKINS & MANN, P.C.
Attorneys for Bank of America, N.A.
376 East 400 South, Suite 300
Salt Lake City, UT 84111
Telephone:  801-355-2886
Fax:  801-328-9714
Email: brian@hwmlawfirm.com
File No: 49952

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH
## CENTRAL DIVISION

| In re: | Bankruptcy Case No. 19-26803 JTM |
|---|---|
| | Chapter 13 |
| SHANE MARQUISE TRICE | **MOTION TO TERMINATE AUTOMATIC STAY AS TO BANK OF AMERICA, N.A. AND FOR IN-REM RELIEF PURSUANT TO 11 U.S.C.A. § 362 (d)(4)** |
| Debtor. | |

Bank of America, N.A. ("BOA”), hereby moves the Court pursuant to 11 U.S.C., Section 362, for an order terminating the automatic stay and for In-Rem Relief Pursuant to 11 U.S.C.A**.** § 362(d)(4) with respect to the following described real property (the "Property") located in Utah County, State of Utah:

>All that certain land situated in the State of UT, County of Utah, City of Draper, described as follows:
>
>Lot 266, Eagle Crest No. 1 at Suncrest, according to the official plat thereof, as recorded in the office of the Utah County Recorder;
>
>Commonly known as 14997 Eagle Crest Dr, Draper, UT 84020-5722;
>
>Tax Parcel No.: 38-334-0266

1

so that it may proceed with the foreclosure process on its security interest in the property.  This motion is based on the following.

## STATEMENTS OF FACTS

1.    That on or about February 29, 2008, Borrower, Jason L Holt, executed the Promissory Note in the original principal sum of $329,500.00 ("Note"), along with a Deed of Trust, originally in favor of Mortgage Electronic Registration Systems, Inc. as nominee for Countywide Bank, FSB, which granted a security interest in the real property, located at 14997 Eagle Crest Dr, Draper, UT 84020-5722 (the "Property").  Copies of the Note and Deed of Trust are attached hereto as Exhibit "A".

2.    The Note and beneficial interest in the Deed of Trust was subsequently transferred from Mortgage Electronic Registration Systems, Inc. as nominee for Countywide Bank, FSB to BAC Home Loans Servicing, LP FKA Countywide Home Loans Servicing LP, then subsequently to U.S. Bank Trust, N.A., as Trustee for LSF9 Master Participation Trust, and lastly to Bank of America, N.A.  Copies of the Assignments are attached hereto as Exhibit "B".

3.    Borrower has defaulted under the terms of the Note and Mortgage by failing to make the monthly payments due on July 1, 2010, and all subsequent payments.

4.    On December 30, 2008, Borrower, Jason L. Holt, recorded a Quit Claim Deed in favor of Kelli Holt with the Utah County Recorder's Office.  A copy of the Quit Claim Deed is attached hereto as Exhibit "C".

5.    On August 23, 2010, Borrower filed Bankruptcy case 10-31442.  The Borrower was discharged on December 2, 2010 and the case was terminated.

6.    On January 18, 2011, Kelli N. Holt filed Bankruptcy case 11-20595.  The debtor was discharged on May 3, 2011 and the case was terminated.

7.   As a result of Borrower's default under the terms of the Note and Trust Deed, BOA substituted James H. Woodall, PLLC as the successor trustee of the Trust Deed and recorded on March 22, 2012. A copy of the recorded Substitution of Trustee is attached as Exhibit "D".

8.   James H. Woodall, PLLC executed a Notice of Default and Election to Sell on February 29, 2012 and recorded on March 22, 2012. A copy of the recorded Notice of Default and Election to Sell is attached as Exhibit "E".

9.   On July 12, 2016, Borrower filed Bankruptcy case 16-26060. This case was dismissed for failure to pay filing fee on August 18, 2016.

10.   On May 12, 2017, Borrower filed Bankruptcy case 17-24175. This case was dismissed on September 5, 2018.

11.   On October 15, 2018, Kelli Holt, executed a Quit Claim Deed in favor of Dennis P. Roundy. On October 22, 2018, the Quit Claim Deed was recorded with the Utah County Recorder's Office. A copy of the Quit Claim Deed is attached hereto as Exhibit "F".

12.   On October 29, 2018, Michael Adrian Deherrera filed Bankruptcy case 18-28070, appearing to have a possessory interest in the property by listing the property as his residence. This case was dismissed for failure to pay filing fee on November 9, 2018.

13.   On December 15, 2018, Borrower filed Bankruptcy case 18-29329. This case was dismissed on May 13, 2019.

14.   On July 5, 2019, Borrower filed Bankruptcy case 19-24936. This case was dismissed for failure to pay filing fee on July 26, 2019.

15.   On September 14, 2019, Dennis P. Roundy, executed a Quit Claim Deed in favor of Dennis P. Roundy and Shane Marquise Trice. On September 16, 2019, the Quit Claim Deed

was recorded with the Utah County Recorder's Office. A copy of the Quit Claim Deed is attached hereto as Exhibit "G".

16.     On September 16, 2019, the Debtor filed this instant case. Although it is unclear from the docket as no schedules have been filed, it is almost certain that the Debtor will list the property as an asset in an attempt to impose the stay as to this property.

## ARGUMENT

### 1.     Court should grant relief from the Stay

11 U.S.C.A. 362(d)(1) provides that relief from the stay shall be granted for cause (1) cause and (2) (A) the debtor does not have an equity in such property and (B) such property is not necessary to an effective reorganization. There is cause to terminate the stay under 362(d)(1) based upon the scheme by the Borrower, which now involves Debtor, to hinder, delay, or defraud BOA. The Debtor does not have equity in the Property and the Property is not necessary for an effective reorganization.

*A.     Cause to Terminate the Stay Due to the Scheme to Delay and/or Hinder BOA.*

Borrower has engaged in a sophisticated scheme involving both the transfer of part ownership or other interest in the Property without the consent of the secured creditor or court approval and the filing of multiple bankruptcies all while the underlying loan has been in default. The property has been transferred multiple times, all with the intent of preventing Secured Creditor from successfully completing its foreclosure of the Property. The only intent has been to prevent foreclosure for as long as possible. It is clear that the Borrower is engaging in a scheme to delay, hinder or defraud Secured Creditor, and using non-borrower individuals, including the Debtor, as pawns to further delay Secured Creditor. As such, cause exists to terminate the automatic stay.

4

**2.      Relief from Stay under 362(d)(4)**

11 U.S.C.A. 362(d)(4) provides for relief from the stay shall be binding on the property

for two years from the date of the entry of the order.

> With respect to a stay of an act against real property by a creditor whose claim is secured
> by an interest in such real property, if the court finds that the filing of the petition was
> part of a scheme to delay, hinder, **or** defraud creditors that involved:
>        (A)      transfer of all or part ownership of, or other interest in, such real property
> without the consent of the secured creditor or court approval.
>        (B)      multiple bankruptcy filings affecting such real property.
> If recorded in compliance with applicable State laws… be binding in any other case under
> this title filed not later than 2 years after the date of order.

In the present case, Borrowers and Debtor's successive bankruptcy petitions coupled with

multiple pre-petition transfers of ownership of such property, without the consent of the secured

creditor, was part of a scheme to delay, hinder, or defraud creditor affecting the Property.

Therefore, BOA requests that the Court order be binding on the property for the next two years.

**3.      Waiver of Rule 4001(a)(3) 14 Day Waiting Period**

Pursuant to Rule 4001(a)(3) an order granting a motion for relief from an automatic stay

made in accordance with Rule 4001(a)(1) is stayed until the expiration of 14 days after the entry

of the order, *unless the court orders otherwise* (emphasis added).  The Court should waive the

14-day waiting period based upon the scheme to delay, hinder and defraud BOA.  Therefore,

BOA requests that the stay be terminated effective immediately upon the Court signing the Order

Terminating the Stay.

WHEREFORE, BOA moves the Court for the following relief:

1.      That the evidentiary hearing to be held within thirty days of the date of this

motion in accordance with 11 U.S.C., Section 362, be the final evidentiary hearing on this

matter;

2.      That the automatic stay pursuant to 11 U.S.C., Section 362, be modified and

terminated to permit BOA to immediately exercise its rights and remedies under applicable state and federal law;

3.    That any order granting relief from the stay be binding on the Property pursuant to 11 U.S.C.A. § 362(d)(4) in that no automatic stay will be in effect for a period of two years in respect to the Debtor's real property located at 14997 Eagle Crest Dr, Draper, UT 84020-5722, more particularly described as:

> All that certain land situated in the State of UT, County of Utah, City of Draper, described as follows:
>
> Lot 266, Eagle Crest No. 1 at Suncrest, according to the official plat thereof, as recorded in the office of the Utah County Recorder.
>
> Tax Parcel No.: 38-334-0266

4.    With respect to Rule 4001(a)(3), for immediate enforcement of any order for relief granted herein;

5.    That in the event an order dismissing this case is entered prior to the hearing on BOA's motion that the court retain jurisdiction for the limited purpose of both hearing and ruling on BOA's motion.

DATED this 1st day of October, 2019.

_/s/ Brian J. Porter_____

Brian J. Porter

Attorney for Bank of America, N.A.

# EXHIBIT "A"

# NOTE

## AFFIDAVIT OF LOST NOTE

STATE OF FLORIDA
COUNTY OF HILLSBOROUGH

BEFORE ME, an officer authorized to take oaths this day, personally appeared Rebecca Kowal of Bank of America, N.A. ("**BANA**") who, being first duly sworn, deposes and says:

1.      I am an employee of BANA with the title of Assistant Vice President and am authorized to sign this affidavit on behalf of BANA. Based on BANA's business records, BANA is the servicer with respect to the following loan ("Loan"):

> **Loan Number:** ▮▮▮▮▮
> **Borrower(s) Stated on Note:** JASON L. HOLT
> **Date of Note:** 02/29/2008
> **Principal Balance Stated on Note:** $329,500.00
> **Property Address:** 14997 EAGLE CREST DR, DRAPER, UT 84020-5722

2.      Some of the information in this affidavit is taken from BANA's business records. I have personal knowledge of BANA's procedures for creating and maintaining these records. Such business records are: (a) made at or near the time of the occurrence of the matters set forth therein by persons with personal knowledge of the information in the business record, or from information transmitted by persons with personal knowledge; and (b) kept in the course of BANA's regularly conducted business activities. It is the regular practice of BANA to make such records. I have personal knowledge of BANA's procedures for the safekeeping and retrieval of original notes serviced by BANA and BANA's lost note procedures for determining that an original note is lost.

3.      Based on BANA's business records, attached as Exhibit A is a copy of the note for the Loan ("Note").

4.      I have personal knowledge that BANA's lost note procedures were followed in determining that the Note has been lost and that a good faith effort was made to locate the Note in accordance with such procedures.

5.      After due diligence and based on BANA's business records, possession of the Note cannot reasonably be obtained because the Note was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person.

1 of 2

6.     Based on BANA's business records, the loss of possession of the Note is not the result of a rightful transfer or a lawful seizure of the Note.

                    FURTHER AFFIANT SAYETH NOT.

                                        BY: _____

                                        NAME: Rebecca Kowal

                                        TITLE: Assistant Vice President

                                        DATE: _____6-16-17_____

STATE OF FLORIDA
COUNTY OF HILLSBOROUGH

Sworn to (or affirmed) and subscribed before me on this [ 16ᵗʰ ] day of
[ June ]; 2017, by Rebecca Kowal (name of signer).


(NOTARY SEAL)

                                        _____
                                        (Signature of Notary Public-State of Florida)

YAMILA ISABEL SOTO
Notary Public, State of Florida
Commission# FF 182455
My comm. expires Feb. 9, 2019

                                        Yamila Isabel Soto
                                        (Name of Notary Typed, Printed, or Stamped)


Personally known __X__ OR Produced Identification _____
Type of Identification Produced _____

2 of 2

## INDEMNIFICATION FOR AFFIDAVIT OF LOST NOTE

This indemnification agreement is made in connection with the Affidavit of Lost Note attached herewith. The undersigned agrees that, in the event the undersigned recovers the promissory note at any time, the undersigned will cause the note to be returned to the proper place of custody, without requiring any consideration.

The undersigned also agrees to indemnify and hold the maker of the note, **JASON L. HOLT**, and any of the maker's heirs and assigns harmless against any loss or damage, including principal, interest, reasonable attorneys' fees and costs, that might occur by reason of a claim by another person to enforce the note.

Date: _6-16-17_                  BANK OF AMERICA, NATIONAL ASSOCIATION

By: _____

Name: Rebecca Kowal

Title:  Assistant Vice President

Prepared by: DANA OCHMANOWICZ

# NOTE



LOAN #:

FEBRUARY 29, 2008                    DRAPER                    UTAH
[Date]                              [City]                    [State]

14997 EAGLE CREST DR, DRAPER, UT 84020-5722
[Property Address]

**1.   BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U.S. $329,500.00        (this amount is called "Principal"),
plus interest, to the order of the Lender. The Lender is
COUNTRYWIDE BANK, FSB
I will make all payments under this Note in the form of cash, check or money order.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to
receive payments under this Note is called the "Note Holder."

**2.   INTEREST**
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate
of    6.000%.
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B)
of this Note.

**3.   PAYMENTS**
   **(A)   Time and Place of Payments**
I will pay principal and interest by making a payment every month.
I will make my monthly payment on the  FIRST       day of each month beginning on  APRIL 01, 2008       .
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I
may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before
Principal. If, on  MARCH 01, 2038       , I still owe amounts under this Note, I will pay those amounts in full on that date, which
is called the "Maturity Date."
I will make my monthly payments at
P.O. Box 10219, Van Nuys, CA 91410-0219
or at a different place if required by the Note Holder.
   **(B)   Amount of Monthly Payments**
My monthly payment will be in the amount of U.S. $1,975.52       .

**4.   BORROWER'S RIGHT TO PREPAY**
I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a
"Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as
a Prepayment if I have not made all the monthly payments due under the Note.
I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my
Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to
the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the
Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the
Note Holder agrees in writing to these changes.

**5.   LOAN CHARGES**
If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan
charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be
reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which
exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe
under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial
Prepayment.

**6.   BORROWER'S FAILURE TO PAY AS REQUIRED**
   **(A)   Late Charge for Overdue Payments**
If the Note Holder has not received the full amount of any monthly payment by the end of  FIFTEEN       calendar
days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    5.000 % of
my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

   **(B)   Default**
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

ORIGINAL

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Fixed Rate Note
2006N-XX (03/07)(d/i)                    Page 1 of 2                    Form 3200 1/01





610                    N   001   001

LOAN #:

**(C)  Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D)  No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E)  Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7.  GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9.  WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10.  UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

ORIGINAL

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
JASON L. HOLT                          -Borrower                                                    -Borrower

_____ (Seal)          _____ (Seal)
                                       -Borrower                                                    -Borrower

*[Sign Original Only]*

PAY TO THE ORDER OF

WITHOUT RECOURSE
COUNTRYWIDE BANK, FSB

BY [signature]
LAURIE MEDER
SENIOR VICE PRESIDENT

# DEED OF TRUST

RETURN TO:
TRANSCONTINENTAL TITLE CO.
RECORDING DIVISION
2605 ENTERPRISE ROAD STE#200
CLEARWATER, FL 33759-9973

After Recording Return To:
COUNTRYWIDE BANK, FSB
MS SV-79 DOCUMENT PROCESSING
P.O. Box 10423
Van Nuys, CA 91410-0423

Prepared By:
DANA OCHMANOWICZ
COUNTRYWIDE BANK, FSB

340 SOUTH WARMINSTER ROAD
HATBORO
PA 19040

10370965
03/12/2008 10:31 AM $54.00
Book - 9581 Pg - 1580-1602
GARY W. OTT
RECORDER, SALT LAKE COUNTY, UTAH
TRANSCONTINENTAL TITLE OLDSMAR
4033 TAMPA RD STE 101
OLDSMAR FL 34677
BY: ZJM, DEPUTY - MA 23 P.

*** BEING SUBMITTED TO RE-RECORD IN THE
CORRECT COUNTY OF UTAH ***

———————————— [Space Above This Line For Recording Data] ————————————

[Doc ID #]

Tax Serial Number: ▮▮▮▮▮▮▮

# DEED OF TRUST

MIN ▮▮▮▮▮▮▮

ENT 45975:2008 PG 1 of 24
RANDALL A. COVINGTON
UTAH COUNTY RECORDER
2008 Apr 18 11:48 am FEE 56.00 BY TO
RECORDED FOR TRANSCONTINENTAL TITLE C

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated FEBRUARY 29, 2008 , together with all Riders to this document.

UTAH - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

MERS Deed of Trust-UT
1006A-UT (01/08)(d/i)                        Page 1 of 14                        Form 3045 1/01

 

ENT **45975:2008** PG 2 of 24

DOC ID #: ▮▮▮▮▮▮▮▮

(B)  "Borrower" is

JASON L HOLT

Borrower is the trustor under this Security Instrument.

(C)  "Lender" is

COUNTRYWIDE BANK, FSB

Lender is a FED SVGS BANK

organized and existing under the laws of THE UNITED STATES

Lender's address is

1199 North Fairfax St. Ste.500, Alexandria, VA 22314

(D)  "Trustee" is

STEWART T. MATHESON, ATTORNEY AT LAW

648 E. FIRST SOUTH, SALT LAKE CITY, UT 84102

(E)  "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F)  "Note" means the promissory note signed by Borrower and dated  FEBRUARY 29, 2008  . The Note states that Borrower owes Lender

THREE HUNDRED TWENTY NINE THOUSAND FIVE HUNDRED and 00/100

Dollars (U.S. $329,500.00         ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than  MARCH 01, 2038

(G)  "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H)  "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I)  "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☒ Planned Unit Development Rider | ☒ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(J)  "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K)  "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L)  "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M)  "Escrow Items" means those items that are described in Section 3.

DOC ID #:

**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants, conveys and warrants to Trustee, in trust, with power of sale, the following described property located in the

| COUNTY | of | UTAH | : |
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] | |

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

which currently has the address of

14997 EAGLE CREST DR, DRAPER                    ,
[Street/City]

Utah 84020-5722 ("Property Address"):
        [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the

MERS Deed of Trust-UT
1006A-UT (01/08)                              Page 3 of 14                              Form 3045 1/01

DOC ID #:

"Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant, convey and warrant the Property and that the Property is unencumbered, except for encumbrances of record. Borrower further warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1.   **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.   **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

DOC ID #:

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.    **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.    **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground

DOC ID #: ▓▓▓▓▓▓▓▓

rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.    **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds

DOC ID #:

for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.    **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.    **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.    **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.    **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not

MERS Deed of Trust-UT
1006A-UT (01/08)                            Page 7 of 14                            Form 3045 1/01

DOC ID # : ▮▮▮▮▮▮▮▮▮▮▮▮▮

limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

   **10.  Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

DOC ID #:

(a)  Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b)  Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11.  Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are

ENT  45975:2008 PG 10 of 24

DOC ID #: ██████████

attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12.   Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13.   Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14.   Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15.   Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing

DOC ID #: ▮▮▮▮▮▮▮▮

it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to
Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to
Lender until actually received by Lender. If any notice required by this Security Instrument is also required
under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this
Security Instrument.

**16.  Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed
by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations
contained in this Security Instrument are subject to any requirements and limitations of Applicable Law.
Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such
silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or
clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other
provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include
corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include
the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17.  Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18.  Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest
in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those
beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow
agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a
natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent,
Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this
option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide
a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which
Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the
expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further
notice or demand on Borrower.

**19.  Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower
shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest
of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument;
(b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or
(c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender
all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred;
(b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this
Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation
fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this
Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest
in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by
this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement
sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order;
(c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an
institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds
Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain
fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of
acceleration under Section 18.

**20.  Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the
Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A
sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due

DOC ID # : ▮▮▮▮▮▮▮

under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given**

DOC ID #:

to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If the power of sale is invoked, Trustee shall execute a written notice of the occurrence of an event of default and of the election to cause the Property to be sold and shall record such notice in each county in which any part of the Property is located. Lender or Trustee shall mail copies of such notice in the manner prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. In the event Borrower does not cure the default within the period then prescribed by Applicable Law, Trustee shall give public notice of the sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines (but subject to any statutory right of Borrower to direct the order in which the Property, if consisting of several known lots or parcels, shall be sold). Trustee may in accordance with Applicable Law, postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the county clerk of the county in which the sale took place.

23.  **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.

24.  **Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

DOC ID #: ███████

**25. Request for Notices.** Borrower requests that copies of the notices of default and sale be sent to Borrower's address which is the Property Address.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
JASON L. HOLT                              - Borrower

_____ (Seal)
                                          - Borrower

_____ (Seal)
                                          - Borrower

_____ (Seal)
                                          - Borrower

STATE OF UTAH,                UTAH      County ss:

The foregoing instrument was subscribed and sworn to and acknowledged before me this _____
29 February 2008  by JASON L HOLT
_____
_____
_____

My Commission Expires: 3-24-2010

                        M Diane White
                   Notary Public  M. Diane White
                   Residing at: SALT LAKE COUNTY

Notary Public
M. DIANE WHITE
2180 West 4700 South
Salt Lake City, Utah 84118
My Commission Expires
March 24, 2010
State of Utah

MERS Deed of Trust-UT
1006A-UT (01/08)          Page 14 of 14          Form 3045 1/01

## REACKNOWLEDGEMENT

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

THIS DOCUMENT REFERENCES CERTAIN DEED OF TRUST DATED **FEBRUARY 29TH, 2008 – RECORDED MARCH 12TH, 2008 IN SALT LAKE COUNTY, UTAH, AS** DOCUMENT # 10370965 BY AND BETWEEN **JASON L. HOLT,  AS BORROWER(S)** AND **COUNTRYWIDE BANK, FSB, AS LENDER WITH MERS AS NOMINEE -  MIN #** ███████████████ **SAID DOCUMENT IS BEING RE-AFFIRMED BY BORROWER(S) TO RE-RECORD IN THE CORRECT COUNTY OF UTAH.**

_____          _____
                                       JASON L. HOLT              Borrower

PROPERTY ADDRESS:          **14997 SOUTH EAGLE CREST DRIVE DRAPER, UT 84020**

PARCEL ID NUMBER:          ████████████

STATE OF  _Utah_
COUNTY OF  _Salt Lake_

On _April  10_____, 200 _8_, before me, _Christine K Ashdown_ personally appeared **JASON L. HOLT,**  personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

TYPE OF IDENTIFICATION_____

WITNESS my hand and official seal.

                                       _____
                                       Notary's Signature
CHRISTINE K. ASHDOWN                    My Commission Expires: _1-17-2011_
NOTARY PUBLIC · STATE OF UTAH           (seal)
11850 S. STATE STREET STE 101
DRAPER, UTAH 84020
COMM. EXP. 01-17-2011

FILE # ████████

**EXHIBIT "A"**    ENT   45975:2008 PG 16 of 24

ALL THAT CERTAIN LAND SITUATED IN THE STATE OF UT, COUNTY OF Utah, CITY OF Draper, DESCRIBED AS FOLLOWS:

LOT 266, EAGLE CREST NO. 1 AT SUNCREST, ACCORDING TO THE OFFICIAL PLAT THEREOF, AS RECORDED IN THE OFFICE OF THE UTAH COUNTY RECORDER.

A.P.No:            ███████

**APN:**

ENT  45975:2008 PG 17 of 24

DOC ID #:

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this TWENTY-NINTH    day of
FEBRUARY, 2008   , and is incorporated into and shall be deemed to amend and supplement the
Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the
undersigned (the "Borrower") to secure Borrower's Note to
COUNTRYWIDE BANK, FSB

(the "Lender") of the same date and covering the Property described in the Security Instrument and
located at:

14997 EAGLE CREST DR
DRAPER, UT 84020-5722

[Property Address]
The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with
other such parcels and certain common areas and facilities, as described in
THE COVENANTS, CONDITIONS, AND RESTRICTIONS FILED OF RECORD
THAT AFFECT THE PROPERTY

(the "Declaration"). The Property is a part of a planned unit development known as
EAGLE CREST AT SUNCREST

[Name of Planned Unit Development]

**MULTISTATE PUD RIDER** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
-7R (0411)      CHL (12/05)(d)        Page 1 of 3
VMP Mortgage Solutions, Inc.                    **Form 3150  1/01**



DOC ID #: ███████████

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

VMP®-7R (0411)      CHL (12/05)          Page 2 of 3                    Form 3150 1/01

ENT · 45975:2008 PG 19 of 24

DOC ID #: ▮▮▮▮▮▮▮▮▮

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

_____ (Seal)
JASON L. HOLT                                                            - Borrower

_____ (Seal)
                                                                                  - Borrower

_____ (Seal)
                                                                                  - Borrower

_____ (Seal)
                                                                                  - Borrower

VMP®-7R (0411)        CHL (12/05)              Page 3 of 3                    Form 3150  1/01

ENT **45975:2008** PG 20 of 24

# 1-4 FAMILY RIDER
### (Assignment of Rents)

After Recording/Return To:
COUNTRYWIDE BANK, FSB
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423
PARCEL ID #:
█████████

Prepared By:
DANA OCHMANOWICZ
COUNTRYWIDE BANK, FSB

340 SOUTH WARMINSTER ROAD
HATBORO
PA 19040

███████████████████
[Doc ID #]

**MULTISTATE 1 - 4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

Page 1 of 5

 -57R (0411)   CHL (11/04)(d)

VMP Mortgage Solutions, Inc. (800)521-7291

Initials: _____   Form 3170 1/01



DOC ID #: ████████████

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Initials: _____

ENT  45975:2008 PG 22 of 24

DOC ID #: ▮▮▮▮▮▮▮

THIS 1-4 FAMILY RIDER is made this TWENTY-NINTH day of FEBRUARY, 2008 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to
COUNTRYWIDE BANK, FSB

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

        14997 EAGLE CREST DR, DRAPER, UT 84020-5722

[Property Address]

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in the Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

Initials: _____

VMP ®-57R (0411)        CHL (11/04)        Page 2 of 5        Form 3170 1/01

DOC ID #: ███████████

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

Initials

-57R (0411)    **CHL (11/04)**        Page 4 of 5                Form 3170 1/01

DOC ID #: ███████████

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4 Family Rider.

_____ (Seal)
JASON L. HOLT                                    - Borrower

_____ (Seal)
                                                 - Borrower

_____ (Seal)
                                                 - Borrower

_____ (Seal)
                                                 - Borrower

VMP -57R (0411)      CHL (11/04)        Page 5 of 5              Form 3170 1/01

# EXHIBIT "B"

ENT **8360:2011** PG 1 of 2
**Jeffery Smith**
**UTAH COUNTY RECORDER**
2011 Jan 26 4:02 pm FEE 12.00 BY CS
RECORDED FOR LSI TITLE AGENCY INC.
ELECTRONICALLY RECORDED

**RECORDING REQUESTED BY:**
RECONTRUST COMPANY, N.A.
2380 Performance Dr, TX2-984-0407
Richardson, TX 75082

**WHEN RECORDED MAIL DOCUMENT**
**TAX STATEMENT TO:**
BAC HOME LOANS SERVICING, LP
400 National way
SIMI VALLEY, CA  93065

TS No: ▮▮▮▮
TSG No: ▮▮▮▮
APN: ▮▮▮▮

SPACE ABOVE THIS LINE FOR RECORDER'S

## CORPORATION ASSIGNMENT OF DEED OF TRUST/MORTGAGE

FOR VALUE RECEIVED, THE UNDERSIGNED HEREBY GRANTS, ASSIGNS AND TRANSFER TO:

BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING LP

ALL BENEFICIAL INTEREST UNDER THAT CERTAIN DEED OF TRUST DATED 02/29/2008, EXECUTED BY: JASON L HOLT, TRUSTOR: TO STEWART T. MATHESON, ATTORNEY AT LAW, AS TRUSTEE AND RECORDED AS INSTRUMENT NO. 45975:2008 ON 04/18/2008 OF OFFICIAL RECORDS IN THE COUNTY RECORDERS OFFICE OF UTAH COUNTY, IN THE STATE OF UTAH. THE LAND AFFECTED BY THIS ASSIGNMENT IS LOCATED IN UTAH COUNTY, THE STATE OF UTAH AND IS DESCRIBED AS FOLLOWS:

ALL OF THAT CERTAIN LAND SITUATED IN THE STATE OF UT, COUNTY OF UTAH, CITY OF DRAPER, DESCRIBED AS FOLLOWS: LOT 266, EAGLE CREST NO. 1 AT SUNCREST, ACCORDING TO THE OFFICIAL PLAT THEREOF, AS RECORDED IN THE OFFICE OF THE UTAH COUNTY RECORDER.

TOGETHER WITH THE NOTE OR NOTES THEREIN DESCRIBED OR REFERRED TO, THE MONEY DUE AND TO BECOME DUE THEREON WITH INTEREST, AND ALL RIGHTS ACCRUED OR TO ACCRUE UNDER SAID DEED OF TRUST/MORTGAGE.

Dated: 1/25, 20 11

By:   MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC.

1/25/11

BY:
Tiffany Wooten   Assistant Secretary

Tax ID ▮▮▮▮                    Page 1 of 2                    *Form UTAssgn (04/08)*

STATE OF ___**TEXAS**___ )
COUNTY OF ___Tarrant___ )

On 1/25/2011 , before me Tammy Ruth Gist , personally appeared
Tiffany Wooten, Asst.Sec. , known to me (or proved to me on the oath of _____ or
through Tx DL ) to be the person whose name is subscribed to the foregoing instrument and
acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.
WITNESS MY HAND AND OFFICIAL SEAL

Tammy Ruth Gist
Notary Public's Signature

TAMMY RUTH GIST
Notary Public, State of Texas
My Commission Expires
July 21, 2014

Tax ID: ▮▮▮▮▮▮              Page 2 of 2              *Form UTAssgn (04/08)*

Recording Requested By:

And When Recorded Mail To:
**Caliber Home Loans, Inc.**
**13801 Wireless Way**
**Oklahoma City, OK 73134**

ENT **89706:2016**  PG  1 of 2
**Jeffery Smith**
**Utah County Recorder**
2016 Sep 14 11:14 AM FEE 14.00 BY VM
RECORDED FOR Trustee's Title & Escrow
ELECTRONICALLY RECORDED

_____ Space above for Recorder's use _____

Customer#: **1/1**   Service#: ▊▊▊▊   ‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖-

Loan#: ▊▊▊▊▊▊

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, **BANK OF AMERICA N.A., SUCCESSOR BY MERGER TO BAC HOME
LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING LP, 1800 TAPO
CANYON RD, SIMI VALLEY, CA  93063-0000**, hereby assign and transfer to **U.S. BANK TRUST, N.A., AS
TRUSTEE FOR LSF9 MASTER PARTICIPATION TRUST, 13801 WIRELESS WAY, OKLAHOMA
CITY, OK  73134-0000**, all its right, title and interest in and to said Deed of Trust in the amount of **$329,500.00**
dated **FEBRUARY 29, 2008** and executed by **JASON L HOLT** as Trustor, and **MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC., AS NOMINEE FOR COUNTRYWIDE BANK, FSB, ITS
SUCCESSORS AND ASSIGNS** as Original Beneficiary, and recorded in the office of the County Recorder of
**UTAH** County, State of **UTAH**, on **APRIL 18, 2008**, as Instrument No. **45975:2008**, in Book No. **—**, at Page
No. **—** of Official Records, describing and relating to the real property situated in **UTAH** County, State of Utah,
particularly as follows: Legal Description: **ALL THAT CERTAIN LAND SITUATED IN THE STATE OF
UT, COUNTY OF UTAH, CITY OF DRAPER, DESCRIBED AS FOLLOWS: LOT 266, EAGLE CREST
NO. 1 AT SUNCREST, ACCORDING TO THE OFFICIAL PLAT THEREOF, AS RECORDED IN THE
OFFICE OF THE UTAH COUNTY RECORDER. A.P. NO:** ▊▊▊▊▊▊

Date: **AUGUST 30, 2016**
**BANK OF AMERICA N.A., S/B/M TO BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE
HOME LOANS SERVICING LP, BY CALIBER HOME LOANS, INC., AS ITS ATTORNEY IN FACT**

By: _____
**Mindi Coleman, Authorized Signatory**

ENT **89706:2016**    PG  2 of 2

Loan#: [redacted]    Srv#: [redacted]
Page 2

State of        **OKLAHOMA**                    }
County of     **OKLAHOMA**                    } ss.

On **AUGUST 30, 2016** , before me, B. Coulter, a Notary Public, personally appeared  **Mindi Coleman** , who
proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument.
Witness my hand and official seal.

(Notary Name): **B. Coulter**
My commission expires: 05/14/2020

Prepare By:   **ANURAG A GUPTA - CALIBER**

ENT **27623:2017** PG 1 of 1
**Jeffery Smith**
**Utah County Recorder**
2017 Mar 22 11:22 AM FEE 10.00 BY DA
RECORDED FOR Trustee's Title & Escrow
ELECTRONICALLY RECORDED

PARCEL ID #: ██████████
Requested and Prepared by:

When Recorded Mail To:
BANK OF AMERICA, N.A.
4161 PIEDMONT PARKWAY
GREENSBORO, NC 27410-8110

TS No: ████████
APN: █████

Property Address:
14997 SOUTH EAGLE CREST DR,
DRAPER, UT 84020-5722

_____

SPACE ABOVE THIS LINE FOR RECORDER'S

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to **BANK OF
AMERICA, N.A.** interest as beneficiary under that certain Deed of Trust dated: 2/29/2008 executed by
**JASON L HOLT**, Trustor(s), to **STEWART T. MATHESON, ATTORNEY AT LAW**, original
trustee, and recorded on **3/12/2008**, as Instrument No. 10370965*, **in Book 9581, Page 1580-1602**, of
Official Records, in the office of the County Recorder's office of **Salt Lake** County, Utah LOT 266,
EAGLE CREST NO. 1 AT SUNCREST, ACCORDING TO THE OFFICIAL PLAT THEREOF, AS
RECORDED IN THE OFFICE OF THE UTAH COUNTY RECORDER.
*DOT RE-RECORDED IN THE CORRECT COUNTY OF UTAH ON 4/18/08, DOC# 45975:2008 and
all rights accrued or to accrue under said Deed of Trust.

Date: 03/15/2017                        U.S. BANK TRUST, N.A. AS TRUSTEE FOR LSF9 MASTER
                                        PARTICIPATION TRUST, By Caliber Home Loans, Inc., as its
                                        Attorney in fact

                                        _Mindi Coleman_
                                        Mindi Coleman, Authorized Signatory

State of Oklahoma        } SS
County of Oklahoma       }

On  03/15/2017      before me,____Amber Marcha_____, personally appeared
____Mindi Coleman, Authorized Signatory_____ who proved to me on the basis of satisfactory
evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.  I certify
under PENALTY OF PERJURY under the laws of said State that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Signature _Amber Marcha_                    (Seal)

Page 1 of 1

## ASSISTANT SECRETARY'S CERTIFICATE

## OF

## BANK OF AMERICA, NATIONAL ASSOCIATION

The undersigned, Devra Lindgren, an Assistant Secretary of Bank of America, National Association (the "Association"), a national banking association organized and existing under the laws of the United States of America and having its principal place of business in the City of Charlotte, County of Mecklenburg, State of North Carolina, does hereby certify that:

1. Effective April 27, 2009, **Countrywide Home Loans Servicing LP** changed its name to **BAC Home Loans Servicing, LP**.

2. Effective July 1, 2011, **BAC Home Loans Servicing, LP** merged with and into **Bank of America, National Association**.

IN WITNESS WHEREOF, I have hereupon set my hand and affixed the seal of said Association this 29th day of March, 2012.

[SEAL]

Devra Lindgren
Assistant Secretary

# EXHIBIT "C"

When recorded, Mail to:

*14997 S. Eagle Crest Dr*
*Draper, UT 84020*

ENT **135361:2008** PG 1 of 1
**RANDALL A. COVINGTON**
**UTAH COUNTY RECORDER**
2008 Dec 30 3:27 pm FEE 10.00 BY EO
RECORDED FOR INTEGRATED TITLE INSURANCE
ELECTRONICALLY RECORDED

## Quit - Claim Deed

Jason L. Holt as grantor of Salt Lake City, Salt Lake County, State of Utah, hereby QUIT-CLAIM to Kelli Holt, as grantee of Salt Lake City, Salt Lake County, State of Utah for the sum of Ten and 00/100 ------------------------------------DOLLARS, and other good and valuable considerations, the following described tract of land in Utah County, State of Utah:

Lot 266, Eagle Crest No. 1 at Suncrest, according to the official plat thereof, as recorded in the office of the Utah County Recorder.

Tax Parcel No. █████████

Jason L. Holt

STATE OF UTAH
       ss.
COUNTY OF SALT LAKE

     On the    day of December, 2008, personally appeared before me Jason L. Holt, the signer of the above instrument, who duly acknowledged to me that they executed the same.

CHRISTINE K. ASHDOWN
NOTARY PUBLIC•STATE OF UTAH
11050 S. STATE STREET STE 101
DRAPER, UTAH 84020
COMM. EXP. 01-17-2011

COURTESY RECORDING
This document is being recorded solely as a courtesy and an accommodation to the parties named therein. INTEGRATED TITLE INSURANCE SERVICES LLC hereby expressly disclaims any responsibility or liability for the accuracy or the content thereof.

# EXHIBIT "D"

ENT 22843:2012 PG 1 of 1
Jeffery Smith
Utah County Recorder
2012 Mar 22 12:56 PM FEE 10.00 BY SS
RECORDED FOR Trustee's Title & Escrow
ELECTRONICALLY RECORDED

WHEN RECORDED MAIL TO:

LAW OFFICES OF JAMES H. WOODALL, PLLC
10808 RIVER FRONT PARKWAY, SUITE 175
SOUTH JORDAN UT 84095

# SUBSTITUTION OF TRUSTEE

T.S. NO: ███████

APN: ███████

NOTICE IS HEREBY GIVEN that LAW OFFICES OF JAMES H. WOODALL, PLLC, is hereby appointed Successor Trustee under a Deed of Trust executed by JASON L HOLT Trustor, to secure certain obligation in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC AS NOMINEE FOR COUNTRYWIDE BANK, FSB ITS SUCCESSORS AND ASSIGNS as Beneficiary, and STEWART T. MATHESON, ATTORNEY AT LAW as Original Trustee, executed on February 29, 2008 and recorded on March 12, 2008 as Entry No. 10370965, in Book 9581, at Page 1580-1602 of official records, DOT RE-RECORDED IN THE CORRECT COUNTY OF UTAH ON 4/18/08, DOC# 45975:2008 of SALT LAKE County, State of Utah, describing the land therein as follows:

LOT 266, EAGLE CREST NO. 1 AT SUNCREST, ACCORDING TO THE OFFICIAL PLAT THEREOF, AS RECORDED IN THE OFFICE OF THE UTAH COUNTY RECORDER.

THE BENEFICIARY RATIFIES AND CONFIRMS ANY AND ALL ACTIONS TAKEN ON THE BENEFICIARY'S BEHALF BY THE HEREIN APPOINTED SUCCESSOR TRUSTEE PRIOR TO THE RECORDING OF THIS SUBSTITUTION OF TRUSTEE.

Dated:   02/29/12

BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING LP BY CAL-WESTERN RECONVEYANCE CORPORATION AS ITS ATTORNEY IN FACT

**Monica L. Gonzalez, A.V.P.**

State of California)
County of San Diego)

On  3\1\12               before me,      C. Hoy                     a Notary Public, personally appeared ___Monica L. Gonzalez, A.V.P.___ personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal

Signature_____

C. Hoy
Commission # 1901203
Notary Public - California
San Diego County
My Comm. Expires Aug 23, 2014

C. Hoy

SUBUT.DOC

Page 1 of 1

# EXHIBIT "E"

ENT **22844:2012** PG 1 of 2
**Jeffery Smith**
**Utah County Recorder**
2012 Mar 22 12:56 PM FEE 12.00 BY SS
RECORDED FOR Trustee's Title & Escrow
ELECTRONICALLY RECORDED

WHEN RECORDED RETURN TO:

LAW OFFICES OF JAMES H. WOODALL, PLLC
10808 RIVER FRONT PARKWAY, SUITE 175
SOUTH JORDAN  UT  84095

# NOTICE OF DEFAULT

T.S NO. ███████

APN. ███████

NOTICE IS HEREBY GIVEN THAT
JASON L HOLT as Trustor,
STEWART T. MATHESON, ATTORNEY AT LAW as Trustee,
in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC AS NOMINEE FOR
COUNTRYWIDE BANK, FSB ITS SUCCESSORS AND ASSIGNS as Beneficiary, under Deed of Trust
dated February 29, 2008, recorded March 12, 2008, in the official records of Utah County, Utah,
as Entry No. 10370965*, in Book 9581, at Page 1580-1602, covering the following described real
property situated in said County and State, to-wit:
LOT 266, EAGLE CREST NO. 1 AT SUNCREST, ACCORDING TO THE OFFICIAL PLAT
THEREOF, AS RECORDED IN THE OFFICE OF THE UTAH COUNTY RECORDER. *DOT RE-
RECORDED IN THE CORRECT COUNTY OF UTAH ON 4/18/08, DOC# 45975:2008
Said obligation included a Note for the principal sum of $329,500.00.

That a breach or a default in the obligation for which said Deed of Trust is security has occurred as
follows: Failure to pay the monthly payment due July 01, 2010 of principal and interest and subsequent
installments due thereafter; plus late charges; together with all subsequent sums advanced by beneficiary
pursuant to the terms and conditions of said deed of trust.
Trustee's fees and costs and expenses associated with this foreclosure and any further breach of any term
or condition contained in subject note and deed of trust.
Monthly Payments: $2,342.12
Monthly Late Charge: $.00
Total Delinquency as of February 29, 2012 is $46,546.50

That by reason of such default, BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC
HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING LP the current
Beneficiary under such Deed of Trust, has executed and delivered to said Trustee a written declaration of
default and a demand for sale, and has deposited with said Trustee such deed and all documents
evidencing the obligation secured thereby are immediately due and payable and has elected and does elect
to cause the trust property to be sold to satisfy the obligations secured thereby.

NODUT.DOC

Page 1 of 2

# NOTICE OF DEFAULT

T.S NO. ███████

Dated: February 29, 2012

LAW OFFICES OF JAMES H. WOODALL, PLLC
10808 RIVER FRONT PARKWAY, SUITE 175
SOUTH JORDAN  UT  84095

(801)254-9450

STATE OF UTAH
COUNTY OF SALT LAKE          }

On _____02/29/2012_____, James H. Woodall
personally known to me (or proved to me on the basis of satisfactory evidence) to be
the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or
the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal          (this area for Notary Seal)

Signature

Notary Public
COLLEEN CURREY
Commission #578319
My Commission Expires
May 20, 2013
State of Utah

NODUT.DOC                                                                    Page 2 of 2

# EXHIBIT "F"



When Recorded Mail to:
Dennis P. Roundy
14997 South Eagle Crest Dr
Draper, UT 84020

ENT 101062:2018 PG 1 of 1
JEFFERY SMITH
UTAH COUNTY RECORDER
2018 Oct 22 10:30 am FEE 10.00 BY DA
RECORDED FOR ROUNDY, DENNIS P

FILE NO.:

## QUIT CLAIM DEED

KELLI HOLT, Grantor, of UTAH COUNTY, State of UTAH, hereby CONVEYS and QUIT CLAIMS to DENNIS P. ROUNDY, Grantee, of UTAH COUNTY, State of Utah, for the sum of FOUR THOUSAND DOLLARS ($4,000.00) AND OTHER VALUABLE CONSIDERATIONS*****the following described tract(s) of land in Utah County, State of Utah, to-wit:

LOT 266, EAGLE CREST NO. 1 AT SUNCREST, ACCORDING TO THE OFFICIAL PLAT THEREOF, AS RECORDED IN THE OFFICE OF THE UTAH COUNTY RECORDER.

The street address and other common designation of the real property described above is purported to be:   14997 SOUTH EAGLE CREST DR, DRAPER, UT 84020
Utah County Property Tax ID No. ▮▮▮▮▮▮

WITNESS the hand(s) of said grantor(s), this _15th_ day of October, 2018.

Signed in the presence of

**KELLI HOLT**

STATE OF UTAH              )
                                         ).ss
COUNTY of UTAH         )

On the _15_ day of October, 2018, personally appeared before me, KELLI HOLT, the signer of the above instrument, who duly acknowledged to me that she executed the same.

NOTARY PUBLIC
LARISABEL VONGTHONGCHIT
695594
COMMISSION EXPIRES
JULY 08, 2021
STATE OF UTAH

NOTARY PUBLIC
Residing In: West Jordan
My Commission Expires: July 08, 2021

# EXHIBIT "G"

When Recorded Mail to:

Dennis P. Roundy
14997 South Eagle Crest Dr
Draper, UT 84020

ENT 91146:2019   PG 1 of 1
Jeffery Smith
Utah County Recorder
2019 Sep 16 11:46 AM FEE 40.00 BY DA
RECORDED FOR Richland Title Insurance Agency Inc.
ELECTRONICALLY RECORDED

FILE NO.:

# QUIT CLAIM DEED

DENNIS P. ROUNDY, Grantor, of UTAH COUNTY, **State of UTAH, hereby CONVEYS and QUIT CLAIMS to DENNIS P. ROUNDY AND SHANE MARQUISE TRICE, Grantees, of UTAH COUNTY, State of Utah, AS TENANTS IN COMMON for the sum of FIVE HUNDRED DOLLARS ($500.00) AND OTHER VALUABLE CONSIDERATIONS*****the following** described tract(s) of land in Utah County, State of Utah, to-wit:

**LOT 266, EAGLE CREST NO. 1 AT SUNCREST, ACCORDING TO THE OFFICIAL PLAT THEREOF, AS RECORDED IN THE OFFICE OF THE UTAH COUNTY RECORDER.**

**Together, with all buildings, fixtures, and improvements thereon and all water rights, rights of way, easements, rents, issues, profits, income, tenements, hereditaments, franchise, privileges and appurtenances thereunto belonging, now or hereafter used or enjoyed with said property, or any part thereof.**

**The street address and other common designation of the real property described above is purported to be:**

14997 SOUTH EAGLE CREST DR, DRAPER, UT 84020
**Utah County Property Tax ID No.** ▮▮▮▮

**WITNESS the hand(s) of said grantor(s), this** _14_ **day of September, 2019.**

Signed in the presence of

**DENNIS P. ROUNDY**

STATE OF UTAH )
).ss
COUNTY of SALT LAKE )

On the _14_ day of September, 2019, personally appeared before me, DENNIS P. ROUNDY, the signer of the above instrument, who duly acknowledged to me that he executed the same.

NOTARY PUBLIC
LAM DUC HO
691901
COMMISSION EXPIRES
OCTOBER 25, 2020
STATE OF UTAH

NOTARY PUBLIC
Residing In: _Salt Lake, Utah_
My Commission Expires:
_Oct 25, 2020_

COURTESY RECORDING

This document is being recorded solely as a courtesy and an accommodation to the parties named herein. Richland Title Insurance Agency, Inc hereby expressly disclaims any responsibility or liability for the accuracy of the content thereof.